Filed 7/20/23  Scaccia v. Scaccia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| BRIAN SCACCIA, | C094344 |
| Plaintiff and Appellant, | (Super. Ct. No. CV-2014-1820) |
| v. | |
| JOHN SCACCIA, JR., | |
| Defendant and Respondent. | |

Brian Scaccia representing himself, appeals following summary judgment granted in favor of his brother, John Scaccia, Jr.,[1] who is also representing himself.  The brothers sued each other in Ohio and California for various claims arising from the care, treatment, and estate of their deceased mother, Anne Ringkamp.  John sued in Ohio, and then Brian sued in California.  Years after John obtained a judgment against Brian in the

---

[1] Because the brothers share the same surname, we intend no disrespect and refer to each by their first name in order to avoid confusion.

1

Ohio action, the trial court in Yolo County entered judgment for him in the California action. On appeal, Brian claims the trial court erred. We affirm.

BACKGROUND

We start by noting a fundamental tenet of appellate practice. An appellant's opening brief must contain "a summary of the significant facts" relevant to the issues raised in the appeal. (Cal. Rules of Court, rule 8.204(a)(2)(C).) Where the judgment and all underlying rulings are purportedly being challenged on appeal, a factual summary is critically important, particularly in a case such as this where the record spans 28 volumes and more than 20,000 pages. In light of the absence of a coherent factual summary in appellant's opening brief, the following is our attempt to briefly summarize what appear to be the relevant facts as asserted by appellant, with additional facts highlighted in pertinent discussions below.

Anne Ringkamp (Ringkamp), the mother of Brian and John, died at Sutter Davis Hospital (Sutter) in November 2013. In the next year, John sued Brian in Ohio, and then Brian sued John in Yolo County. Each claimed, among other things, that the other brother breached a fiduciary duty owed to the plaintiff brother or to Ringkamp, committed fraud, and converted large sums of Ringkamp's money, thereby harming her heirs. Brian's suit included a cause of action for wrongful death against John, Sutter, and a Sutter medical doctor, claiming there was a conspiracy to "euthanize" Ringkamp.

Ultimately, John obtained a default judgment in the Ohio action against Brian in 2014 (Ohio judgment). And in 2021, John obtained a judgment in his favor in Brian's Yolo County action, after the trial court granted summary adjudication on all of Brian's claims that were not later voluntarily dismissed. The trial court's judgment for John is the subject of this appeal.

As Brian characterizes the facts, Ringkamp lived in Ohio from 1997 to 2013, where she rented a house from John, who lived next door. In August 2013, she moved to California and began living with Brian. In September 2013, Brian took her to the Sutter

2

emergency room because she was having difficulty breathing and appeared to have suffered a stroke.

Brian's second amended complaint states that a scan of Ringkamp's lungs revealed a liver tumor. Dr. Daniel Kennedy (Dr. Kennedy), one of her treating physicians at Sutter and a codefendant in the underlying action, stated the tumor was probably caused by metastatic cancer elsewhere in the body and that she was dying of cancer. Dr. Kennedy refused tests to determine if Ringkamp had cancer, and recommended a course of action finding that Ringkamp's quality of life had deteriorated so much that it should not be prolonged. Brian disagreed and stated it was premature to treat Ringkamp as if she had terminal cancer, insisting that her poor health was likely the result of bad living conditions in Ohio. After Ringkamp was discharged from the hospital, she told Brian she wanted aggressive treatment.

On November 10, 2013, Ringkamp returned to Sutter with severe respiratory distress. Within days, she contracted an antibiotic-resistant infection and was placed on a ventilator. Dr. Kennedy claimed she was in pain, and he sought Brian's permission to remove her from the ventilator. When Brian refused, Dr. Kennedy contacted John and let him make decisions about Ringkamp's care and treatment, despite Brian's warnings to Dr. Kennedy that John had committed "financial and physical elder abuse and neglect" of Ringkamp. Dr. Kennedy did not attempt to obtain a copy of Ringkamp's advanced health care directive (AHCD), which Brian had previously told Dr. Kennedy about, and which named Brian as Ringkamp's agent in healthcare decisions.

John told Dr. Kennedy that Brian had kidnapped Ringkamp for financial reasons, that she was in decent health when in Ohio, and that Brian was starving and abusing her financially and physically. Dr. Kennedy never gave Brian an opportunity to rebut John's claims. Believing that Ringkamp's death would "silence the sole witness to his unpaid loans [from] her . . . and keep anyone from learning that he used fraud or extortion to take money from her since 2003," Brian claimed that John decided to "euthanize" Ringkamp

3

and that Dr. Kennedy agreed.  With the approval of John, who had traveled to California, and without Brian's knowledge, Ringkamp's ventilator was removed on November 23, 2013, and she died that day.

Brian sued John, Dr. Kennedy, and Sutter, both on his own behalf and on behalf of Ringkamp.  The operative complaint contains 22 causes of action, 20 of which are asserted against John.[2]

In 2020, John moved for summary adjudication on most of Brian's claims in the second amended complaint, arguing many of the claims implicated the 2014 Ohio judgment John obtained against Brian, and therefore were barred by California's "litigation privilege" and/or principles of res judicata, collateral estoppel, and "full faith and credit."[3]

In September 2020, the trial court overruled Brian's objections to John's evidence, and granted summary adjudication in favor of John on 14 of Brian's claims.  Citing the parties' separate statements of material facts, the trial court explained that John met his burden of showing that one or more elements of each cause of action could not be established, or that there was a complete defense to the cause of action, and Brian had failed to show that a triable issue of material facts existed as to any of those causes of action or complete defenses.  (Code Civ. Proc., § 437c, subd. (p)(2).)

---

[2]  A different panel of this court recently affirmed the trial court's summary judgment in favor of Dr. Kennedy and Sutter in *Scaccia v. Kennedy et al.* (Mar. 30, 2023, C093627) [nonpub. opn.] (*Kennedy et al.*).

[3]  Article IV, section 1, of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State." Similarly, California law provides that "the effect of a judicial record of a sister state is the same in this state as in the state where it was made."  (Code Civ. Proc., § 1913, subd. (a).)

After Brian voluntarily dismissed the six remaining claims against John, the trial court entered judgment for John in June 2021. Brian timely appealed. This case was fully briefed in April 2023.[4]

DISCUSSION

I

*Appellant's Burden on Appeal*

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).)

To demonstrate the trial court's summary adjudication for John was incorrect, Brian must "support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] In addition, citing cases without any discussion of their application to the present case results in forfeiture. [Citations.] We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*); see *Woods v. Horton* (2008) 167 Cal.App.4th 658, 677 ["A court need not consider an issue where reasoned, substantial argument and citation to supporting authorities are lacking"]; *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 689 ["asserted grounds for appeal . . . that merely

---

[4] In March 2023, Brian requested we take judicial notice of multiple categories of documents, including court filings in Ohio, court filings in connection with the probate of Ringkamp's estate, and portions of the record in *Kennedy et al.* John opposed. The request for judicial notice is denied, because consideration of the documents is unnecessary for resolution of this appeal.

complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion"].)

In addition to providing reasoned, coherent argument and supporting legal authority, an appellant must provide adequate citations to the record on appeal. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 (*Mansell*).) "Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 (*WFG*).) Simply put, "it is not this court's function to serve as . . . backup appellate counsel." (*Mansell*, at p. 546.) These rules apply here, even though Brian, like John, is representing himself, and "self-representation is not a ground for exceptionally lenient treatment." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

II

*Claims of Error*

A.    "Refused Continuances and Recusal"

Brian argues the trial court abused its discretion by denying continuances he sought without considering his homelessness, automobile breakdowns, and "heavily litigated related cases burdening him." He also asserts the trial court "refus[ed] to recuse" itself. Brian does not support these contentions with reasoned argument. He says the trial court "refus[ed] to recuse," but provides neither a pertinent citation to the record nor argument. And although he cites one case, the case has no discussion of pertinent law. Accordingly, this claim is forfeited on appeal. (See *Woods v. Horton*, *supra*, 167 Cal.App.4th at p. 677.)

B.    *"Defense Rests on Void Judgment"*

Under this claim, and interspersed throughout the opening brief, Brian appears to argue that the Ohio judgment is void because the Ohio courts lacked personal jurisdiction over him, and never fairly decided the issue of jurisdiction. Specifically, Brian appears to

6

contend John never mailed necessary paperwork to Brian's address in California, and an Ohio appellate court ruling rejecting a version of this contention was "contrary to jurisdictional law and facts," thereby "creat[ing] extrinsic fraud" by depriving Brian of the opportunity to present his defense to John's action. Citing sections of the Probate Code, Brian also appears to argue Ohio courts lacked subject matter jurisdiction over all of John's claims because they concerned Ringkamp's estate, which was probated in Yolo County.

To the extent this claim is an effort to assert that the Ohio judgment does not preclude any of Brian's causes of action against John, we are not persuaded. Brian has not demonstrated the Ohio judgment is void. And the provisions of the Probate Code that Brian cites, but does not discuss, do not stand for the proposition that John could not bring his Ohio claims against Brian.

### 1. *Preclusion*

"Preclusion comes in two main forms: claim preclusion and issue preclusion. [Citation.] . . . Like many courts, [our Supreme Court] previously used the terms 'res judicata' and 'collateral estoppel' when discussing claim and issue preclusion, respectively." (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323.) Claim preclusion " 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.' [Citation.] Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit. [Citations.] If claim preclusion is established, it operates to bar relitigation of the claim altogether." Issue preclusion "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)

"The doctrines of res judicata and collateral estoppel bar relitigation of a factual dispute even when the factual dispute was erroneously decided in favor of a party who

7

did not testify. . . . [¶] Courts often speak of applying full faith and credit to a sister state's judgment in order to implement res judicata principles. [Citation.] 'With respect to judgments, "the full faith and credit obligation is exacting." [Citation.] . . . A State may not disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits.' " (*Hawkins v. SunTrust Bank* (2016) 246 Cal.App.4th 1387, 1393-1394.)

Citing *Milliken v. Meyer* (1940) 311 U.S. 457 (*Milliken*), Brian contends that "[v]oid judgments are rendered by courts lacking jurisdiction either of the subject matter or the parties." He further contends that because his appeal of the Ohio judgment resulted in a decision "contrary to jurisdictional law and facts," the Ohio judgment is "void under [Ohio] law." We are not persuaded.

*Milliken* stands for the proposition that "[w]here a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is . . . open to inquiry," "[b]ut if the judgment on its face appears to be a 'record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself.' " (*Milliken*, *supra*, 311 U.S. at p. 462.) If jurisdiction is not disproved, "the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based. [Citations.] Whatever mistakes of law may underlie the judgment [citation] it is 'conclusive.' " (*Ibid.*)

The Ohio judgment on its face appears to be a record of a common pleas court, which is a court of general jurisdiction. (*Ohio High Sch. Ath. Ass'n v. Ruehlman* (2019) 157 Ohio St. 3d 296, 298.) Brian offers no reasoned argument regarding what extrinsic evidence or parts of the record of the Ohio judgment disprove jurisdiction. His contention that an Ohio appellate ruling was "contrary to jurisdictional law" is unavailing as it depends on an impermissible "inquiry into . . . the validity of the legal principles" on

8

which the Ohio judgment was based.  (*Milliken*, *supra*, 311 U.S. at p. 462; see *Medical Legal Consulting Servs. v. Covarrubias* (1991) 234 Cal.App.3d 80, 87 [citing *Milliken* for the proposition that in cases "involving full faith and credit issues, it is presumed that the first state to impose a judgment had jurisdiction over the parties"].)

### 2. *Probate Code Section 7050-7052*

Brian invokes sections 7050-7052 of the Probate Code, which relate to trial court jurisdiction over proceedings concerning the administration of a decedent's estate and the proper venue for these proceedings.  He asserts these statutes support the proposition that "[o]nly Yolo County's court had jurisdiction over claims by purported beneficiaries" of Ringkamp's will "or those making claims against the estate or its beneficiaries."  Even if Brian's understanding of those statutes is accurate, there is no reasoned argument in his brief discussing the nature of each of John's claims from the Ohio judgment, and how they might fall within the categories of claims Brian contends could have been brought only in Yolo County.  All Brian tells us in his opening brief is that had John been truthful John's kidnapping claim would have rendered an Ohio court a potential venue for the claim.  Such an assertion without support by pertinent or cognizable legal argument and factual analysis is forfeited on appeal.  (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

### C. "*Conversion and Tortious Interference with a Business Relationship*"

It appears Brian's claim under this heading is that he should be permitted to amend his complaint regarding causes of action for conversion and tortious interference with a business relationship.  This claim is forfeited on appeal, because a trial court's decision denying leave to amend is reviewed for an abuse of discretion and it is a plaintiff's burden to demonstrate abuse.  (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612.)  Although it is plaintiff's burden to demonstrate the trial court abused its discretion in denying leave to amend, Brian does not explain in his brief which trial court order he is challenging or rebut the presumption that the trial court's order is

9

correct. (*Jameson*, *supra*, 5 Cal.5th at pp. 608-609; *Allen*, *supra*, 234 Cal.App.4th at p. 52.)

D.      "*Abused Process and/or Maliciously Prosecuted*"

Brian also now "seeks amendment to clarify" his abuse of process cause of action "and add a [cause of action] for malicious prosecution." But he again does not explain in his brief which trial court order he is challenging or rebut the presumption that the trial court's order is correct. (*Jameson*, *supra*, 5 Cal.5th at pp. 608-609.) Accordingly, this contention is forfeited on appeal. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

E.      "*Defamation and False Light Rulings Abused Discretion and Erroneous*"

This claim appears to be that the trial court's summary adjudication of causes of action for false light and defamation was error because John "created an evidentiary void" on those issues by refusing to provide discovery and that Brian therefore was entitled to "favorable inferences." Brian does not cite to the record to support the assertion John created an evidentiary void. Because this claim is not supported by adequate citations to the record and fails to present a coherent argument, this claim is forfeited on appeal. (See *Mansell*, *supra,* 30 Cal.App.4th at pp. 545-546; *Allen*, *supra*, 234 Cal.App.4th at p. 52.)

F.      "*Unjustifiable Denials of Plaintiff's Motions*"

Here, Brian's argument is that the trial court erred in February 2020 when it denied his motion for partial default judgment against John. Brian contends the trial court claimed his motion was based on John's failure to answer the operative complaint. That was error, Brian contends, because the title of his motion clearly stated the basis for sanctions was fraud, contempt, and discovery abuse.

The relevant order denied Brian's motion without prejudice, in part because Brian had "not established that lesser sanctions, such as an order striking pleadings or parts of pleadings or an order staying further proceedings until discovery orders are obeyed, have been inadequate to *curb abuses of the discovery act*." (Italics added.) Brian offers no

10

discernible, reasoned argument how this component of the ruling, which clearly references the notion of discovery abuses, was error. Accordingly, the argument is forfeited on appeal. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

Further, Brian also appears to challenge the trial court's denial of his own motion for summary adjudication. But, again, he provides no reasoned argument how that ruling was error. So this argument is forfeited on appeal too. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

G. *"Conspiracy: Wrongful Death, Probate Codes, and Elder Abuse"*

Brian argues the trial court erred by granting summary adjudication in favor of John on his wrongful death, "decisions law," and elder abuse causes of action. For example, Brian argues that John "ignored records stating" Brian was Ringkamp's "agent with her AHCD." But Brian provides no citation to these records. Accordingly, this claim is forfeited on appeal. (See *Mansell*, *supra,* 30 Cal.App.4th at pp. 545-546.)

To the extent we can find relevant portions of the record on our own, we reject Brian's claim on the merits. For instance, Brian contends John's motion for summary adjudication was supported with "inadmissible evidence." But the trial court overruled all of Brian's evidentiary objections to John's evidence in support of his motion for summary adjudication, and Brian does not explain how that evidentiary ruling was error.

Brian also appears to contend that because John "feigned ignorance" that Brian was Ringkamp's "designated surrogate and AHCD agent," there is a triable issue of fact as to whether there was a conspiracy between John, Dr. Kennedy, and Sutter to hasten Ringkamp's death. Though Brian provides no citation to the record in support of this contention, Brian argued in the trial court it was "inconceivable" John did not know Ringkamp had an AHCD. For support of that contention in the trial court Brian cited to a portion of his declaration, wherein he states that in July 2013, John's son entered a room in Ohio as the AHCD was explained to Ringkamp by a "healthcare social worker and nurse," and Brian explained to John's son "what was occurring."

11

That John's son might have known about the AHCD does not create a triable issue of fact that *John* knew about the AHCD. (See *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524 ["A party cannot avoid summary judgment based on mere speculation and conjecture"].)

H.    "*Fraud*"

Brian seeks to amend his cause of action for fraud, arguing he was "unjustly denied" the opportunity to amend the second amended complaint. But again, he provides no reasoned argument in support of the contention. Accordingly, the contention is forfeited on appeal. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

Brian also argues John "knowingly represented fraudulent medical records to the Ohio court." But having found above that Brian failed to demonstrate the Ohio judgment is "void," and therefore that the judgment is entitled to full faith and credit in California, we must reject any effort by John to collaterally attack the Ohio judgment.

I.    "*Appellant Denied Discovery*"

Brian's argument for this claim discusses ostensible discovery abuses by John's codefendants in the trial court, and explains that "records relevant to this appeal . . . await the related appeal," *Kennedy et al.* Such argument, without factual or legal support, does not demonstrate trial court error in granting summary judgment to John and we need not discuss it.

Brian also argues that "[j]ustifying the merits and necessity of [his] discovery to his case and in opposition to [John] would make" his 122-page opening brief "excessively large." Accordingly, Brian refers us to the justifications in his trial court motions and cites nearly 500 pages of the record. As it is not our job to "scour the record unguided" and since he simply directed us to underlying papers, Brian has forfeited this argument on appeal. (*WFG*, *supra*, 51 Cal.App.5th at p. 894.)

12

J.     *"Unrepresented One-Person Estate-Heirs Can Pursue . . . Claims"*

Brian invokes case law for the proposition that, even though non-attorneys cannot represent "multiple-heir estates," it may be possible that a sole beneficiary can represent an estate. But Brian does not tether this proposition to a specific ruling of the trial court that he is challenging. Accordingly, this claim is forfeited on appeal. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

K.     *"Denied Right to Amend"*

Arguing the trial court improperly denied him leave to amend his complaint on multiple occasions, Brian cites approximately 400 pages of the record without clearly identifying which rulings or orders he challenges on appeal, and as noted numerous times, it is not our job to cull through the record to find support for undeveloped arguments. Accordingly, this claim is forfeited on appeal. (*WFG*, *supra*, 51 Cal.App.5th at p. 894; see also *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600.)

Within the pages Brian cites, is a July 15, 2020, order by the trial court denying with prejudice Brian's motion for leave to file a third amended complaint. The trial court reasoned that motion "completely fail[ed] to comply with California Rule of Court 3.1324(b)," because Brian did not state in his supporting declaration the effect of the amendment, why the amendment was necessary and proper, when the facts giving rise to the amended allegations were discovered, and the reasons why the request was not made earlier. Although it is plaintiff's burden to demonstrate the trial court abused its discretion in denying leave to amend (*Leader v. Health Industries of America, Inc.*, *supra*, 89 Cal.App.4th at p. 612), Brian does not explain in his brief why that order was erroneous or rebut the presumption that the trial court's order is correct (*Jameson*, *supra*, 5 Cal.5th at pp. 608-609). Accordingly, this contention is forfeited on appeal. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

13

L. *"MSJ Gave Insufficient Notice and Incompetent Evidence Justifying Denial"*

Citing section 437c of the Code of Civil Procedure, Brian appears to contend that modified courthouse operations in 2020 due to the COVID-19 pandemic resulted in a violation of his statutory right to a minimum number of days between the filing of John's motion for summary adjudication and the trial court's hearing on that motion on September 2, 2020. Specifically, Brian appears to argue that he had only "21 court days" to prepare for a hearing on John's motion for summary adjudication.

Section 437c, subdivision (a)(2) of the Code of Civil Procedure requires notice of the motion for summary judgment and supporting papers be served on all other parties to the action at least 75 days before the time appointed for hearing, and increases the notice period by specific numbers of days depending on the location of the intended recipient. (Code Civ. Proc., § 437c, subd. (a)(2).)

As far as we can tell, there were over 200 calendar days between when John filed his motion and when the trial court conducted its hearing on the motion. We are unable to discern from Brian's argument how this amounted to a violation of the statute. In any event, Brian has not satisfied his burden to rebut the presumption that the trial court's order is correct. (*Jameson*, *supra*, 5 Cal.5th at pp. 608-609.)

Brian also argues the trial court erroneously "refused to continue the MSJ hearing," and that John's motion for summary adjudication relied on inadmissible evidence and an "incompetent declaration." The trial court overruled all of Brian's evidentiary objections to John's evidence in support of his motion for summary adjudication, and Brian's conclusory assertions of trial court error without pertinent cites to the record are insufficient. (See *Wright v. City of Los Angeles*, *supra*, 93 Cal.App.4th at p. 689 ["asserted grounds for appeal . . . that merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion"]; *WFG*, *supra*, 51 Cal.App.5th at p. 894.)

14

M.    "*Defendants' MSJs are Based on Inadmissible Hearsay and Incompetent Expert Testimony*"

Brian's argument for this claim appears to be directed at the judgment for John's codefendants, which is not the subject of this appeal.  For example, Brian argues Dr. Kennedy's motion for summary judgment relied "solely" on "fraudulent notes."  We discern no coherent argument in this claim explaining why the judgment for *John* was improper.  Accordingly, this claim is forfeited on appeal.  (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

N.    "*Spoliation Prevented Shifting Burden*"

Spoliation refers to the intentional destruction or suppression of evidence. (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 4.)  "[T]here are a number of . . . remedies that seek to punish and deter the intentional spoliation of evidence," including "the evidentiary inference that evidence which one party has destroyed or rendered unavailable was unfavorable to that party." (*Id*. at p. 11.)  This inference is codified in Evidence Code section 413, which provides, "In determining what inferences to draw from the evidence or facts in the case against a party, the trier of fact may consider, among other things, the party's failure to explain or to deny by his testimony such evidence or facts in the case against him, or his willful suppression of evidence relating thereto, if such be the case." (Evid. Code, § 413.)  Brian cites *Cedars-Sinai Medical Center* and Evidence Code section 413, but does not discuss them, resulting in forfeiture of the argument.  (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

Brian contends "[d]efendants" (plural) "effectively spoliated" 10 categories of medical records.  But Brian fails to explain how these records were either destroyed or suppressed, resulting in forfeiture of the argument.  (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

15

O.     *"Failed to Disprove Plaintiff's Case"*

Brian argues "[j]udges cannot abdicate their roles to scrutinize facts by sleepily d[ef]erring to expert summaries." He also argues medical "[m]alpractice is provable . . . by showing obviously inappropriate treatment," and that evidence here "shows [d]efendants[] denied treatment, tortured, and killed" Ringkamp. We discern no reasoned argument challenging the trial court's judgment for John. Accordingly, this claim is forfeited on appeal. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

DISPOSITION

The judgment is affirmed. John is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (a)(2).)

                                 /s/<br>
                           BOULWARE EURIE, J.

We concur:

_____/s/_____
KRAUSE, Acting P. J.

_____/s/_____
MESIWALA, J.

16