Filed 1/28/26  Osunde v. Cal. State Teachers' Retirement System CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| ESEOSA OSUNDE, | C101426 |
| Plaintiff and Appellant, | (Super. Ct. No. CV2022-0163) |
| v. | |
| CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, | |
| Defendant and Respondent. | |

Eseosa Osunde sued his former employer, the California State Teachers' Retirement System (CalSTRS), for discrimination, retaliation, harassment, and failure to prevent discrimination, retaliation, and harassment.  The trial court granted CalSTRS's motion for summary adjudication as to some of the claims, and a jury subsequently returned a verdict in favor of CalSTRS on the others.  Judgment was entered in favor of CalSTRS, and Osunde appeals.  As he did throughout most of the proceedings in the trial court, Osunde is representing himself on appeal.  Because he fails to overcome the presumption that the judgment is correct, we affirm.

1

**A NOTE AT THE OUTSET**

We note several things at the outset because they effectively dispose of this appeal.

First, although Osunde "is representing himself in propria persona, he is not exempt from the rules governing appeals. A self-represented party is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys." (*Elena S.* v. *Kroutik* (2016) 247 Cal.App.4th 570, 574.) "Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

Second, it is a "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; see also *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 559 ["A touchstone legal principle governing appeals is that 'the trial court's judgment is presumed to be correct, and the appellant has the burden to prove otherwise' "], disapproved on another ground in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011-1012 & fn. 2.)

Third, in order to overcome the presumption of correctness, "It is the responsibility of the appellant, here [Osunde], to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*); see also *Woods v. Horton* (2008) 167 Cal.App.4th 658, 677 ["A court need not consider an issue where reasoned, substantial argument and citation to supporting authorities are lacking"]; *Wright v. City of Los Angeles* (2001) 93 Cal.App.4th 683, 689 ["asserted grounds for appeal that are unsupported by any citation to authority and that

merely complain of error without presenting a coherent legal argument are deemed abandoned and unworthy of discussion"].)  Relatedly, "An appellate court is not required to . . . make arguments for parties" (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106), and "[i]t is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852).  Thus, absent reasoned argument and citation to supporting legal authorities from Osunde, we must fall back on the presumption that the judgment is correct.  As will be discussed in more detail below, however, none of Osunde's contentions are supported by meaningful argument or citation to relevant legal authorities.[1]

Fourth, an appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).)  "[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record." (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.)  We are " 'not required to discuss or consider points which are . . . not supported by citation to . . . the record." (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)  In this case, a six-day jury trial was held, and the reporter's transcript of that trial is over 800 pages.  The "Statement of Facts" and "Legal Argument" sections of Osunde's brief, however, contain *no* citations to the reporter's transcript.[2]  Because "[w]e are not required to search the

---

[1]      For example, a quick review of his table of authorities shows he cites just one California case and two California statutes, including a criminal statute that has no applicability to this civil case.

[2]      The only citations to the reporter's transcript appear in a section of the brief headed "Procedural History of the Case" and a section headed "List of issues on appeal," but these citations to the transcript are not accompanied by reasoned argument or citation to authorities.

record to ascertain whether it contains support for [Osunde's] contentions," this omission is potentially fatal. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.) Moreover, and relatedly, to the extent Osunde contends the evidence does not support the judgment, citation to the record is particularly critical. " ' "An appellant challenging the sufficiency of the evidence to support the judgment *must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law*. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient." ' " (*Vendor Surveillance Corp. v. Henning* (2021) 62 Cal.App.5th 59, 76-77, italics added.) Osunde, however, cites *none* of the evidence that supports the judgment.

Fifth, and related to the fourth point, the "Statement of Facts" section of Osunde's brief is supported almost entirely by citation to documents that we cannot find in the record (i.e., "Defendant's Request for Production of Documents, Set One, Bates Numbers EO-722-000001 TO EO-722-000821" and "Eseosa Decl."), and to 24 exhibits that Osunde premarked prior to trial but that were not actually admitted into evidence. Osunde premarked 27 exhibits but only three were admitted: exhibit No. 15 (his resignation letter), exhibit No. 16 (the notice of personnel action form documenting his appointment), and exhibit No. 30 (the notice of personnel action form documenting his separation). Of the remaining premarked exhibits, 16 were never offered into evidence.[3]

---

[3] For example, exhibit No. 6 appears to be text messages between Osunde and someone named Rita Good, but Rita Good did not testify, Osunde did not attempt to authenticate and admit the text messages during his testimony, and we can find no reference to exhibit No. 6 anywhere in the transcript. Based on our review of the transcript, it appears Osunde did not offer exhibits Nos. 6, 7, 8, 9, 10, 13, 14, 18, 22, 23, 26, 27, 29, 31, 32, and 34 into evidence.

Osunde tried to offer the remaining eight exhibits, but none were admitted into evidence.[4] His brief does not identify or mention any particular evidentiary ruling regarding any particular exhibit, much less challenge any particular ruling.  We thus find any "challenge to the trial court's evidentiary rulings was forfeited by [his] failure to separately identify and discuss individual evidentiary objections." (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 463; see also *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 [challenge to trial court's evidentiary rulings is forfeited where brief "fails to identify the court's evidentiary ruling[s] as a distinct assignment of error"].)  Because "we may disregard factual contentions that are . . . [citation] . . . based on information that is outside the record" (*Tanguilig v. Valdez, supra*, 36 Cal.App.5th at p. 520), this effectively means that we may disregard the factual contentions in Osunde's statement of facts.

Sixth, an appellant is required to "[s]tate each point under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).)  This rule " 'was designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 180.)  "Failure to provide

---

[4]  Exhibits Nos. 11, 12, 17, 19, 20, 21, 28, and 33.  Five of these exhibits (12, 17, 19, 20 & 21) contain extensive handwritten notes from Osunde that comment on the case, including that Cozad "lies" and he "was looking for errors but he couldn't find one."  The trial court would not admit the exhibits with the handwritten notes on them, explaining, "The handwriting is the problem.  If it didn't have handwriting, I would allow the exhibit."  Osunde asked if he could "block the handwriting and just show the content of the document to the witness," and the court responded, "You could do that at a break, sure.  I mean, we don't have time right now to white out—I mean, it is all over the paper, so—that's the type of thing that should be done in advance.  And on a break, if you have time, you can address it."  The exhibits were never mentioned again.

proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Id*. at p. 179; see also *Golden Day Schools, Inc. v. Department of Education* (1999) 69 Cal.App.4th 681, 695, fn. 9 [where "argument is not preceded by an appropriate heading, it is deemed waived"].) Moreover, we need only address "the arguments raised by appropriate headings in the *argument portion* of [Osunde's] briefs." (*Newtown Preservation Society v. County of El Dorado* (2021) 65 Cal.App.5th 771, 780, fn. 1, italics added.) Here, there are *no* headings or subheadings in the "Legal Argument" portion of Osunde's brief, and we need not address arguments raised in other sections of the brief "unless they are discussed under an appropriate heading." (*Schaeffer Land Trust v. San Jose City Council* (1989) 215 Cal.App.3d 612, 619, fn. 2; see also *Newtown Preservation Society*, at p. 780, fn. 1 [declining to address arguments raised in procedural history portion of brief].) The headings in Osunde's brief are as follows: "Procedural History of the Case"; "List of issues on appeal"; "Introduction"; "Statement of Facts"; "Issues for Determination"; "Legal Argument"; "Retaliation as Motive"; and "Summary and Conclusion." These headings do not tell us what Osunde is arguing on appeal or on what basis he challenges the judgment. We have attempted to address those arguments we can discern in the "Issues" and "Argument" sections of the brief, but we have not attempted to address arguments that might be lurking in other sections of the brief.

Lastly, " ' "Arguments should be tailored according to the applicable standard of appellate review." [Citation.] Failure to acknowledge the proper scope of review is a concession of a lack of merit.' " (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) "When an appellant fails to apply the appropriate standard of review, the argument lacks legal force," and the appellant "fails to show error in the judgment." (*People v. Foss* (2007) 155 Cal.App.4th 113, 126.) Here, Osunde never mentions the standard of review in his brief. In and of itself, this is "a potentially fatal omission." (*Ewald*, at p. 948.)

6

With these rules in mind, we first provide a short description of the factual and procedural background, and we then address those arguments we are able to discern.

## FACTUAL AND PROCEDURAL BACKGROUND

Osunde is a Black Nigerian immigrant.  He was hired by CalSTRS in September 2019 as an associate governmental program analyst for the audit resolution team.  He reported to Jody Cozad, who managed the team.  Cozad was on the panel that interviewed Osunde, and it was Cozad who made the ultimate decision to hire him.

As a new state employee, Osunde was subject to a six-month probationary period, with written probationary reports due every two months.  In November 2019, Cozad prepared a first probationary report that rated Osunde's performance as "Improvement Needed" in all areas except "Relationships with People/Teamwork/Strength."  Osunde submitted a "[r]ebuttal" denying everything in the report and accusing Cozad of telling him he "should be working in the United Nation or somewhere in Africa."  In early January 2020, Cozad prepared a second probationary report that once again rated Osunde's performance as "Improvement Needed" in all areas except "Relationships with People/Teamwork/Strength."  On January 23, Osunde submitted a letter stating he was resigning from CalSTRS because he "cannot work in a hostile and harassing environment."

Osunde subsequently sued CalSTRS for violating the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), and he claimed his resignation was actually a constructive discharge.  He alleged that, shortly after he started working for CalSTRS, he noticed "something was off about the way Cozad dealt with him." Cozad was "overly critical" of his work and gave him "inconsistent and contradictory instructions."  Osunde "began suspecting that Cozad was discriminating against him and creating a hostile work environment because of [his] race, color, national origin, and/or ancestry," but that he "was camouflaging his discriminatory and harassing acts with fabrications of events and criticisms of Osunde's work."  At some point Osunde

7

confronted Cozad "with demands for an explanation," and Cozad stated, "he feels Osunde should be working in either the United Nations or somewhere in Africa, and that Osunde has 45 days to look for other jobs because it is good to be prepared for whatever may happen to his job at CalSTRS." Osunde reported Cozad's "discriminatory and harassing statements and conduct" to CalSTRS's Human Resources Department (HR), but HR failed to conduct an adequate investigation or take corrective action. After he complained to HR, Cozad took adverse actions against him, "such as prohibiting [him] from collaborating with his colleagues on work-related matters, prohibiting [him] from asking work-related questions, failing to provide [him] updated templates for the performance of his duties, and taking work away from [him] and assigning it to others." The second probationary report was the "final blow," and Osunde submitted his resignation shortly thereafter "because he [could] no longer bear the injustice he ha[d] to suffer as a person of color while working in a hostile, harassing and discriminatory environment." Based on these allegations, Osunde asserted four causes of action against CalSTRS, for: (1) discrimination/disparate treatment on the basis of race, color, national origin, or ancestry; (2) harassment on the basis of race, color, national origin, or ancestry; (3) retaliation for reporting discrimination and harassment; and (4) failure to prevent discrimination, harassment, and retaliation.

Although Osunde was initially represented by an attorney, he began representing himself in November 2022.

In December 2022, CalSTRS moved for summary judgment or summary adjudication. The trial court granted summary adjudication as to the discrimination and retaliation claims and part of the failure to prevent claim. As to the discrimination claim, the trial court found CalSTRS met its burden of negating one of its essential elements—that Osunde was performing competently in the position held—and Osunde failed to identify admissible evidence sufficient to raise a triable issue to the contrary. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355 [in order to establish prima facie case

8

of discrimination a plaintiff must generally show he "was performing competently in the position he held"]; *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 236 [" ' " 'If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing' " ' "].)

As to the retaliation claim, the trial court found CalSTRS proffered "evidence of a legitimate, non-discriminatory reason" for all alleged adverse employment actions, and, once again, Osunde failed to identify admissible evidence sufficient to raise a triable issue to the contrary. (See *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 94 [employer entitled to summary judgment on retaliation claim if it offers evidence of legitimate, nonretaliatory reason for its adverse employment actions and employee fails to "offer evidence sufficient to allow a trier of fact to find either the [employer's] stated reasons were pretextual or the circumstances ' "as a whole support[] a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus" ' "].)

Finally, because "[t]here cannot be a claim for failure to take reasonable steps necessary to prevent . . . discrimination . . . if actionable . . . discrimination has not been found," the trial court also granted summary adjudication on the claim for failure to prevent discrimination and retaliation. (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1318; see also *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289 ["Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct [i.e., discrimination], except where the actions took place and were not prevented"].)

That left just two causes of action:  (1) harassment and (2) failure to prevent harassment.  Those two causes of action were tried to a jury.  The trial lasted six days.  In

9

addition to Osunde and Cozad, the following CalSTRS employees and former employees testified: Scott Eberspacher, a specialist on the audit resolution team who helped mentor Osunde and reviewed some of his work; Kimberley Petz, Cozad's supervisor; Marcella Karr, a former employee who had worked for Cozad and who sat on the panel that interviewed Osunde; Jacqueline Mwiti, an employee who had previously been supervised by Cozad and who had a few interactions with Osunde; Lisa Hongsivilay, an equal employment opportunity officer who investigated Osunde's discrimination and harassment complaint; Avongold Edrosolan, an HR liaison who worked on the recruitment process for the position for which Osunde was hired; and Stephanie Hill, a personnel officer and performance development manager who reviewed Osunde's probationary reports and worked with Cozad on improving Osunde's performance. CalSTRS also offered testimony from two experts: Dr. Jessica Ferranti, who was retained to evaluate Osunde's claimed emotional distress damages, and Dr. Barbara McDermott, who was retained to administer certain psychological tests.[5] Forty exhibits were admitted into evidence, 37 by CalSTRS and three by Osunde.

Osunde's theory of the case, as outlined in his opening statement, was that Cozad was "racist" and subjected him "to abusive conduct because [he is] a Black Nigeria[n] immigrant," as evidenced by the fact that Cozad told Osunde "to go back to Africa." The evidence regarding this alleged comment was disputed. Osunde testified as follows: "I met with Jody Cozad. So when I met with him, I said, 'Why are you treating me like

---

[5]     In order to have its experts examine Osunde, CalSTRS filed a motion pursuant to Code of Civil Procedure section 2032.020 et seq., which permits the court to order "the mental examination of a party in any action in which the mental condition of that party is in controversy." (*Vinson v. Superior Court* (1987) 43 Cal.3d 833, 839.) Osunde sought emotional distress damages, and where a plaintiff seeks such damages, "the existence and extent of [the plaintiff's] mental injuries is indubitably in dispute." (*Id*. at p. 840.) The trial court granted the motion, and Osunde does not mention, much less challenge, that ruling on appeal, and we thus do not discuss it further.

this?  What is going on?' . . . .  [¶]  He said, 'Oh, I feel'—just—just imagine we were just talking.  He just started saying so many things.  First, this is what I'm saying:  He's going to—he should come to the witness box.  He said, 'People just come from Africa, tell them to agree to put you in the position, blah, blah, blah'—just like that, talking.  That's how they see you making so much money, almost a million dollar.  It is not—it is not—they are not doing anything.  And I'm very sure I'm not going to be promoted where am I right now.  If I get one, it is going to be miracle."  After an interruption from the court reporter, Osunde continued:  "Then the next thing, I was just listening to him.  At some point, as I was speechless, he said, 'I think you should go back to Africa,' you know?  I said, 'Go back to Africa?  To do what?'  I was looking at him.  He said, 'People—you are very intelligent.  People need your help there.'  For somebody that is working, 'Go back to Africa.'  Why—you're already telling me that my kind is not wanted here because I have reported, spoken up that I suspected him to be racist, which I said because of his behavior.  [¶]  So the next thing, I was like, 'What?  You said this, really?'  He said, 'Well, I just figure you're too intelligent.  Someone like you, I think you should probably be working'—because he realized that what he said was racist.  'I feel someone like you should probably be working in the United Nation,' of which you know—I already told you before that I have consulted with the United Nation, even worked—worked on so many other these things.  You know, I have done a lot of job, even with USA—you know, working on the international organizations that work with—in Nigeria, have meeting with all the top—all the top—people come from all over the world.  So you already know."  That is the extent of Osunde's testimony about the alleged comment.

Cozad denied making the comment.  He was asked whether he ever told Osunde to go back to Africa, and he responded, "No, I did not."  He was asked again, "[D]id you tell him to go back to Africa?"  And he responded, "No.  And—absolutely not."  Cozad testified Osunde asked to talk to him about performance issues and he "seemed so distraught . . . that I was concerned about his well-being."  Cozad thus "tried to get off the

11

subject of work and get on some other subject, something more happy to try and turn his mood around." Cozad "remember[ed] that his experience was from Nigeria and I remembered how impressed I was with it, but I didn't really know a lot about what he actually did," so he asked Osunde about it, and Osunde "talked about working for and helping women," which Cozad thought was "super cool." Cozad told Osunde "how impressed I was with what he did, and then I asked him—at one point, I asked him, 'So if that sounds'—'if you have a law degree and you're doing something like that, you're in rare air there. You're really somebody special that has something to offer. Why are you working at CalSTRS?" Osunde responded that "he considered it a stepping stone for— for law." Cozad then asked him, " 'if you could do anything, what would you like to do?' And he said that he would like to be a lawyer for The Hague, representing these underprivileged people from Africa. And I was like, 'Wow. That is an awesome goal.' "

Under questioning from Osunde on cross-examination Cozad reiterated, "I asked you about your previous work. You mentioned that you had worked in Nigeria, that you had done some great things with helping women in Nigeria. [¶] I asked you—I commented that that was very impressive, that I had never met anyone that had done such a thing, that—how great I thought that was. I asked you why—what you would like to— what your goals were, and you mentioned that you would ideally like to be an attorney at The Hague so you could advocate on behalf of underprivileged people in Africa. [¶] I asked you if that was what you would like to do, why—why you chose to work at CalSTRS. You mentioned that you thought that it was a stepping stone, and I didn't understand that, so I asked you to explain how CalSTRS was a stepping stone to be an attorney at The Hague, and you said because it had to do with the law. And I asked if you were—that working for a nonprofit or some—might be—or working for a law office would be something that—that ultimately would lead more to your—your personal goals."

12

Cozad also testified extensively about Osunde's performance issues and his efforts to help Osunde improve his performance, as did Scott Eberspacher, Kimberley Petz, and Stephanie Hill.

The jury returned a special verdict finding Osunde was *not* subject to harassment because of his race or national origin. The jury's finding also disposed of the cause of action for failure to prevent harassment. (See *Dickson v. Burke Williams, Inc., supra*, 234 Cal.App.4th at p. 1309 [cause of action for failure to prevent harassment "cannot prevail when the necessary element of . . . harassment is not established"].) The trial court thus entered judgment in favor of CalSTRS and against Osunde on the entire complaint.

## DISCUSSION

### 1. The Order Granting CalSTRS's Motion for Summary Adjudication

It is not clear whether Osunde challenges the trial court's order granting CalSTRS's motion for summary adjudication as to the discrimination, retaliation, and failure to prevent discrimination and retaliation claims. (See *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 ["an order . . . granting summary adjudication of certain claims . . . is generally reviewable on appeal from the final judgment in the action"].) He mentions the motion only once, in passing, in the argument section of his brief, but we cannot tell from his passing comment whether he contends the trial court erred in granting the motion.[6] If he does, we disregard the contention because it is not accompanied by either "meaningful legal analysis" or "citations to facts in the record." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

---

[6] He also mentions the motion several times in passing in the "Procedural History" section of his brief, but, as noted above, we do not discuss arguments that might be lurking in that section. (See *Newtown Preservation Society v. County of El Dorado, supra*, 65 Cal.App.5th at p. 780, fn. 1 [declining to address arguments raised in procedural history portion of brief].)

Moreover, Osunde has not provided us with all of the underlying documents regarding the motion. In particular, he has not provided us with the evidence CalSTRS submitted in support of the motion or his opposition papers. "It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324.) " '[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Because Osunde has not provided us with an adequate record to meaningfully review the summary adjudication order, he has forfeited any arguments challenging that order.

## 2. The Jury's No Harassment Finding

FEHA makes it an unlawful employment practice to "harass" an employee because of their race or national origin. (Gov. Code, § 12940, subd. (j)(1).) Harassment includes, but is not limited to, "[v]erbal harassment" such as "epithets, derogatory comments or slurs on a basis enumerated in the Act" (Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(A)), physical harassment, and visual forms of harassment. (Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(B), (C).) "Unlike FEHA discrimination claims, which address only *explicit* changes in the 'terms, conditions, or privileges of employment' [citation], harassment claims focus on 'situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee.' " (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 627.) "The law prohibiting harassment is violated '[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " ' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 263.) "Whether a work environment is reasonably perceived as hostile or abusive 'is not, and by its nature cannot

14

be, a mathematically precise test.' [Citation.] 'The working environment must be evaluated in light of the totality of the circumstances,' " which " ' "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' " (*Bailey*, at p. 628.) "[T]he issue of whether an employee was subjected to a hostile environment is ordinarily one of fact" to be decided by the jury. (*Nazir*, at p. 264.)

Here, the jury returned a special verdict finding Osunde was not subject to harassment because of his race or national origin. We will assume Osunde contends this finding is not supported by the evidence. In such a case, our role "is not to reweigh the evidence, but only to determine whether the record as a whole contains substantial evidence to support the [jury's] findings." (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 612.) "Under the substantial evidence standard of review, we review the entire record to determine whether there is substantial evidence supporting the jury's factual determinations [citation], viewing the evidence and resolving all evidentiary conflicts in favor of the prevailing party and indulging all reasonable inferences to uphold the judgment [citation]. The issue is not whether there is evidence in the record to support a different finding, but whether there is some evidence that, if believed, would support the findings of the trier of fact." (*Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 170.) Put another way, "We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the verdict in favor of the prevailing party." (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1245.) "[T]he testimony of a single witness, even a party, is sufficient to provide substantial evidence to support a factual finding." (*Fariba*, at p. 171.)

We easily conclude substantial evidence supports the jury's finding that Osunde was not subject to harassment because of his race or national origin. Osunde's primary

argument to the contrary appears to be his claim that Cozad told him "to go back to Africa," which implied "my kind is not wanted here in this country." In addition to highlighting this alleged comment in his brief, he also highlighted it in both his opening statement and his closing argument to the jury. As noted above, however, Cozad denied making the comment, and the jury could have believed Cozad rather than Osunde. Again, "The testimony of a single witness is sufficient proof of any fact." (*Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1550; see also *People v. Brown* (2014) 59 Cal.4th 86, 106 [" 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact' "].)

Both here and in the trial court, Osunde suggests Cozad and other witnesses lied. But it was the jury's job to assess witness credibility, and the jury could have believed Cozad and CalSTRS's other witnesses and disbelieved Osunde. "Credibility is an issue of fact for the trier of fact to resolve." (*Fariba v. Dealer Services Corp., supra*, 178 Cal.App.4th at p. 170.) "[W]e cannot . . . ' "reassess the credibility of witnesses" ' " on appeal. (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 38.) "Fact finders see and hear witnesses. The finder of the facts has a view appellate courts lack. That view is better." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.) Accordingly, "The fact finder's determination of the veracity of a witness is final." (*Ibid*.)

Osunde cites *Bailey v. San Francisco Dist. Attorney's Office, supra*, 16 Cal.5th 611 for the proposition that "a single, severe incident can be considered racial harassment" under FEHA. He is correct on the law. (See *Bailey*, at p. 620 ["an isolated act of harassment may be actionable if it is sufficiently severe in light of the totality of the circumstances, and that a coworker's use of an unambiguous racial epithet, such as the N-word, may be found to suffice"].) But the jury in this case was properly instructed that "[a] single incident can be sufficiently severe or pervasive to constitute harassment," and "we assume the jury followed that instruction." (*People v. Cook* (2006) 39 Cal.4th 566,

16

610; see also *K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 772 [" 'We presume that jurors are intelligent and capable of correctly understanding, correlating, applying, and following the court's instructions' "].)

Finally, and critically, we reiterate that " ' "[a]n appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law. [Citations.] An appellant who fails to cite and discuss the evidence supporting the judgment cannot demonstrate that such evidence is insufficient." ' " (*Vendor Surveillance Corp. v. Henning, supra*, 62 Cal.App.5th at pp. 76-77.) An appellate court has no duty to "independently search the evidentiary record to determine its sufficiency" to support the judgment. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.) Instead, "An appellate court ' "must *presume* that the record contains evidence to support every finding of fact . . . ." ' [Citations.] It is the appellant's burden, not the court's, to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one. [Citation.] 'A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient*. [Citation.]' [Citation.] '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient. He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.' " (*Ibid*.) Osunde completely ignores these rules. His brief cites *none* of the evidence in the record that supports the judgment. Indeed, the "Statement of Facts" and "Legal Argument" sections of his brief effectively contain *no citations to the evidence in the record*. For this additional reason, he fails to demonstrate the judgment is not supported by substantial evidence.

17

### 3. Miscellaneous Arguments

Osunde makes several other miscellaneous arguments that we address to the extent we can discern them.

As noted above, CalSTRS proffered testimony from two experts in forensic psychology: Dr. Ferranti and Dr. McDermott. Dr. Ferranti opined Osunde "did not have any sort of emotional or mental disorder or condition as a result of his employment with CalSTRS," and Dr. McDermott opined "he was, at minimum, exaggerating, and in some instances outright feigning any kinds of both cognitive and psychiatric/psychological symptoms." Osunde appears to challenge the experts' testimony, but it is not clear on what basis he does so. He does not state whether he challenges one or both experts. He never mentions Dr. McDermott in his brief, and he mentions Dr. Ferranti only twice, both times to accuse her of medical malpractice even though this is not a medical malpractice case. He does not identify what portion of the experts' testimony he challenges or tell us where in the record we can find the challenged testimony. Again, this section of his brief contains no citations to the record. We may—and do—disregard evidentiary contentions that are not supported "with appropriate citation to the location of the challenged evidence in the record." (*Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 796; see also *Mansell v. Board of Administration, supra*, 30 Cal.App.4th at p. 545 [we are not required "to search the record to ascertain whether it contains support for [Osunde's] contentions"].) Although he cites the Federal Rules of Evidence dealing with expert testimony (Fed. Rules Evid., rules 702-705)[7] and two United States Supreme Court cases discussing the standard for admitting expert testimony (*Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. 579; *Kumho Tire Co. v. Carmichael* (1999)

---

[7] We note the Federal Rules of Evidence only apply in federal courts (see Fed. Rules Evid., rule 101(a) ["These rules apply to proceedings in United States courts"]), and do not apply to state court proceedings like this one.

526 U.S. 137), he does not explain how those authorities are applicable here. "[C]iting cases without any discussion of their application to the present case results in forfeiture" (*Allen, supra*, 234 Cal.App.4th at p. 52), and "[t]he mere assertion of a statutory . . . violation, followed by simply a citation to the statute . . . , does not merit a judicial response" (*Woods v. Horton, supra*, 167 Cal.App.4th at p. 677). We find Osunde has forfeited any argument regarding the admissibility of expert testimony by failing to support it with "reasoned, substantial argument and citation to supporting authorities." (*Ibid*.)

Any argument Osunde may have about the experts' testimony is also forfeited for a second reason: He failed to object at trial.[8] As a general rule, "a party's failure to object to an expert's testimony at trial forfeits the argument on appeal that the testimony was inadmissible." (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 739; see also *People v. Morales* (2020) 10 Cal.5th 76, 98 ["failure to specifically object to an expert's qualifications forfeits the objection"]; *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020 ["The failure to object or move to strike evidence at trial forfeits any challenge to the evidence on appeal"].)

Osunde also appears to contend that CalSTRS tried to "suppress[] evidence" of harassment of other employees, and/or that the trial court would not allow him to admit such evidence regarding other acts of harassment. It is unclear what he is attempting to argue. He states that CalSTRS's general counsel harassed a "married women" and that the HR director's husband "got a substantial contract sum" from CalSTRS, but he cites *no* evidence in the record supporting either statement, and in any event he fails to explain

---

**8**    He objected to one question to Dr. Ferranti and two questions to Dr. McDermott on the ground they were leading, but the objections were overruled, and Osunde never mentions those objections in his brief and thus gives us no reason to question the trial court's ruling.

how this is relevant to his case. Because this argument is accompanied by *no* citation to the record, *no* citation to relevant legal authorities, and *no* reasoned argument or analysis, we deem Osunde has forfeited whatever point he is trying to make. (See *Kim v. Sumitomo Bank, supra*, 17 Cal.App.4th at p. 979 [appellate court is " 'not required to discuss or consider points which are not supported by citation to . . . the record"]; *Allen, supra*, 234 Cal.App.4th at p. 52 ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

Osunde also mentions "qualifying immunity" and cites "Pearson v. Callahan, (citation omitted)," albeit with no discussion. Presumably he refers to *Pearson v. Callahan* (2009) 555 U.S. 223, in which the United States Supreme Court explained how district courts should evaluate claims of qualified immunity. Osunde does not mention qualified immunity anywhere else in his brief, and he points us to nothing in the record that suggests it was an issue in this case.

Osunde also states the following: "In law, any fact that is already established does not require further proof. A reasonable person can interpret the facts without doubt, and such facts are judicially noticeable. Request for Admission NO. 39: of the defendant admitting that Jody Cozad only said it once, on only one occasion that I should go back to Africa, No. 11 under the list of exhibits I submitted to the court." We do not discern a cognizable argument here. We note that exhibit No. 11 was premarked by Osunde but was not admitted into evidence. Exhibit No. 11 appears to be one page (p. 29) from a separate statement that CalSTRS filed in support of a motion to compel discovery.[9] As

---

[9] Osunde attempted to introduce Exhibit No. 11 during his cross-examination of Hongsivilay, CalSTRS's equal employment opportunity officer. The trial court would not allow him to admit the document because "if you were going show discovery, you would have to show the whole discovery request with the verification. A single sheet taken out of context, that's not permissible." It also explained "there was no foundation laid" that

required by the California Rules of Court, this one page contains (1) the text of CalSTRS's request for admission no. 39, (2) the text of Osunde's response and further response, and (3) a portion of CalSTRS's statement of the factual and legal reasons for compelling further responses. (Cal. Rules of Court, rule 3.1345(a), (c).) Assuming the separate statement is accurate, CalSTRS asked Osunde to admit the following: "Admit that Jody Cozad made the purported comment that YOU 'should be working in either the United Nations or somewhere in Africa' on only one occasion." Osunde objected on various grounds, denied the request "in part," and "admit[ted] that after Jody asked me to go back to Africa and realized he was being a racist, he decided to say, someone like me should be working in the 'United Nation or somewhere in Africa.' " Osunde appears to believe that CalSTRS's request for admission *to him* constitutes a binding admission *by CalSTRS* that Cozad told him he should go back to Africa. If so, we disagree. It is true that "[a]ny matter admitted in response to a request for admission is conclusively established against the party making the admission in the pending action, unless the court has permitted withdrawal or amendment of that admission." (Code Civ. Proc., § 2033.410, subd. (a).) Here, however, CalSTRS propounded a request for admission *to Osunde*; it did not admit anything in response to a request *from Osunde*, much less admit that Cozad told Osunde to go back to Africa.

Osunde's remaining arguments are undeveloped, making them difficult for us to address. For example, under the heading "List of issues on appeal," he argues the trial judge was biased against him, created an unfair and prejudicial atmosphere, and "intentionally used scandalous and vexatious behavior." Osunde repeated this contention during oral argument. However, we find this argument is forfeited because in his briefing

---

Hongsivilay had anything to do with creating the document. As far as we can tell, Osunde did not attempt to admit the document through another witness, including himself, and he proffers no argument for why the trial court erred in refusing to let him admit the document through Hongsivilay.

it does not appear under an appropriate heading, and in both his briefing and at oral argument he failed to support his argument with citations to where in the record we can find evidence the judge was biased, and he failed to offer reasoned argument or citation to legal authorities.  (See, e.g., *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 586, fn. 28 [the appellant "does not mention the judge's alleged bias . . . in any argument heading in his briefs.  Therefore, to the extent he purports to make a separate argument that the judge displayed such a bias, the point is waived"].)  For the same reasons, we find he has forfeited the remaining issues identified under the "List of issues on appeal" heading and any issues raised under the "Retaliation as Motive" heading.

### DISPOSITION

The judgment is affirmed and CalSTRS shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
WISEMAN, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.